Good afternoon. My name is Anne Traum. I represent Mitchell Fields. I would like to reserve five minutes for rebuttal, and I'll try to watch the clock. I also want to note before I start that I did file a 28-J letter last week, and I just want to make sure that the panel received that. It appears that you have. Good. Mitchell Fields raises two claims on appeal, both claiming that his guilty plea was involuntary, first because there was an inadequate canvas, and second because he was denied the effective assistance of counsel. And I'd like to focus on the ineffective assistance claim first. The state court's so-called findings – well, Fields has never had a proper evidentiary hearing on these claims, and the state court's so-called findings on these issues are not entitled to any deference because they were based on extra-record evidence that was admitted in an ex parte hearing without an evidentiary hearing. I'm confused about something. Yes. I don't see what you need the evidentiary hearing for. It looks like on the entry of plea, what we're supposed to do, since it's a state plea, it's not federal. We don't look to see if the federal script was followed. We just look at Boykin v. Alabama. And we can read the transcript for ourselves, and it looks like Boykin is satisfied. And that's the end of it. Am I missing anything there? I think it's fair to review that claim with that particular claim only, or the claims that are in – you know, there's just several claims that go with that without an evidentiary hearing. But I don't think – I think it is impossible to review the ineffective assistance claim, including the failure to investigate and the fact that my client alleges that he was incompetent. I couldn't see what to investigate. If I look at the ineffective assistance claim, it looks like what his defense was, that he wanted his lawyer to do something with, was that he had deals with these women. He'd give them crack, they'd give him sex. He gave them the crack, and then they reneged on a part where they were supposed to give him sex. So he took it anyway. But that's not a defense. That's what the state – that's what the state – That's based on a statement, Your Honor, you're quoting – I mean, you're referring to a statement that he made at sentencing. In his post-conviction petition, he alleged that he pled guilty because his attorney told him that he was a black man accused of raping white women, and that was the end of the investigation, that he didn't need to know anything more. And he attached affidavits to his post-conviction hearing showing that these women were lying, that they lied in the preliminary hearing. They said, for example – He lied about what? He said he took sex with them against their will because they got the crack. It was his part of the deal. So what does it matter what they lied about? It matters if you were to go to trial and you can expose these women as liars and crack users, and with some investigation you might even expose that these women were themselves possibly facing charges. But you can't rape people just because they're crack users. You can attack their credibility. And any rape case, or many rape cases, as we know – Credibility of what? Boil down to – I mean, if he raped them, what does it matter what else they may be liars about? Well, take, for example, Darcelle Petit. She is a woman who testified under oath at a hearing that she had never met this man. My client attaches affidavits to his habeas petition that say this woman was my former lover, not 10 days before this we had sex. So not only does that show that she obviously lied, but that she – maybe the sex was actually consensual with respect to her. Consent defense, then that would be material. But I didn't think that was his defense. It was just that they owed it to him. I didn't understand the last part. I thought his defense was not consent. His defense was that they owed him the sex because he paid the crack. He makes that statement with respect – without respect to any particular victim. I don't think that my client, who was, you know, pro per at that hearing, even understood – may have even understood that he – that consent could be a defense and that he was entitled to a warning that he could be entitled to an instruction on consent. Well, I guess when you're claiming this ineffective assistance of counsel, you're assuming something that didn't happen, too. You know, in terms of what these things would have meant if he had, in fact, gone to trial. Well, he decided not to. So... He decided not to go to trial because his attorney told him that because he was a black man accused of raping white women, that in Nevada you cannot go to trial because you'll lose based on those facts alone. Well, as non-PC as that might sound, isn't race a lot of times a factor in our society? And an attorney – he had more charges than he pled guilty to, correct? Yeah, he did. All right. And if, you know, if anyone that has spent any time in a courtroom to say that maybe the race of the witnesses, the race of the parties or in these type of cases might not be a factor, I mean, wouldn't – I mean, shouldn't an attorney discuss that with their client? It's fine for an attorney to discuss that. But when the investigation of the victim and the investigation of the perpetrator or the accused is only what is their race, that is not investigation. But how can he, you know, when he admitted everything at the plea, you know, essentially admitted the facts that are necessary for a rape, how can he show that he would have prevailed at a trial when, in fact, you know, based on what you're presenting to us? He's not required to show that he would have prevailed at the trial. He would have – he's required to show that his counsel's performance fell below any reasonable standard and that it would have made a difference in the outcome of his plea, that he either would have chosen to go to trial or he could have gotten a better plea deal. And under Strickland, every decision not to investigate must be directly assessed for reasonableness. So the attorney has an obligation to do some investigation more than just determining the race of the victim and the race of the accused. That is not reasonable care. That happens a lot in Nevada, but that's below the reasonable care. I don't recall any evidence that all the lawyer did was determine the race and tell them you're wasting your time because you're black and plead out without telling them anything more or investigating further. Well, what we do know is that Fields alleged – I think you're right to say we don't know what the attorney did. Why don't we know what the attorney did? There was never any affidavit, any testimony from the attorney, any reason proffered by the attorney as to where – why the investigation was not done. It's Fields' burden to show us that the investigation was not done. It's Fields' burden to establish at the outset that the attorney fell below the Strickland standard and that there was prejudice. And then you go forward from there. We have to determine whether the State court unreasonably applied Strickland, which is an additional barrier, but we're not up to that yet. I'm still not clear. What is the evidence that the attorney fell below the standard and that there was – and that that's the only reason Fields pleaded, that he would have gone to trial otherwise? Well, the evidence is – and first I'll just stick briefly with this failure to investigate since we've talked about some, and then I'll move on to the confidence issue because I think that's also very important. The evidence is that he gave – I couldn't hear those last few words. First, I'd like to just talk briefly about the evidence related to the failure to investigate, then switch over to talk about the ineffective assistance claim with the failure to investigate his incompetence. On the failure to investigate witnesses, Fields says as early as his motion to withdraw his guilty plea, and then he repeats this with supporting affidavits. In his habeas petition, I gave him a list of witnesses and he didn't interview them. Then – he says that in his motion to withdraw his guilty plea. Then he says in his habeas petition, I gave him a list of witnesses. He didn't interview him. Here are some of the things that those witnesses could have said. I mean, that those would have said on my behalf, which would have undermined the credibility of the complaining witnesses in a rape case and would have changed the calculus of going to trial. Why? Because if you can – Let's take it as established for purposes of argument that these women are liars and that – of very poor character, and that any competent attorney could show that they're liars and of very poor character. Well, if they're lying about one thing, then they may be lying about a lot of other things. They may be lying about their relationship with the defendant. They may be lying about the circumstances of why they were with him and what they were doing with him and whether they were there voluntarily. They may be lying about whether or not it was against their will, whether they agreed to have sex with them – with him. One of the witnesses, for example, she said that she was taken to his apartment by force in the preliminary hearing, but in fact he got out of the car and she didn't drive away. She waited around for him. I mean, there are things here that could have been exposed with investigation and exposing these women as having real credibility problems. Did he ever say he didn't rape them? He says that – well, he says that it was a – the only sort of statement he has is the one that you focused on, which is that statement in his sentencing hearing that he says it was a barter. That's the only admission he makes. Pretty bad. It's pretty bad. But, I mean, he doesn't know – Is there any case where he says I didn't rape them? But – I mean, we're talking about three different people, three different incidents. Make a statement like he made in the sentencing hearing earlier. Could you repeat what – In the sentencing hearing, although he thought he was making an exculpatory statement, he actually made an inculpatory statement. Yes. Did he say that to the police earlier or to anyone else, that it was all about – he didn't get the benefit as bargain, and that's why it wasn't rape in his mind? I don't know if that's exactly – if that's what he said. I haven't reviewed that, so I don't want to make a statement about it. I would like to go to the incompetence claim, because it also relates back to that Boykin claim also. He alleged in his habeas petition that he was incompetent because he was under the influence of Thorazine, which he had been taking for more than six months, up until within two to three days of his guilty plea hearing. He alleged that he told his counsel that he had – he makes these allegations on 120 and 122 of the record. I had trouble with this Thorazine claim. There are two reasons why I had trouble. Okay. One is, as I recall, there was evidence there that the reason he was taking the Thorazine was for something that wouldn't really bear on his competence. I can't remember if it was sleeping. Well, the district – I mean, the state court judge focused on the difference of whether he was taking it because he was, quote, unquote, hearing voices, or he was taking it because he was having trouble sleeping. But my point is, look, it doesn't matter why this guy is taking it. It matters. It does matter. There are a lot of drugs that relieve a mental problem rather than causing a mental problem. And that is the other question I have about Thorazine. It's commonly prescribed for schizophrenia, and it doesn't cause schizophrenia. It relieves schizophrenia. As long as people are on the Thorazine, they're often highly competent, if they're intelligent, competent people anyway. And if they go off the Thorazine, they go nuts. They start having hallucinations and delusions again. He alleged that he was incompetent. He alleged that he was suffering from the adverse and lingering effects of this drug. This Court has acknowledged in Williams that this drug – Now, I suspect that this man does not know what the word incompetent means. Does he say more concretely what effects of the drug there were on him? He attached – according to the State's opposition, I don't actually have this document with me today, but the State said that he attached an article about the effects of the drug. He also states at page 200 of the record that he told his counsel that he couldn't understand what was being read to him in the guilty plea, that his counsel told him to just say yes to everything anyway because it wasn't important what was actually in the memo. Okay. Now, when – So we know that he said – He said that he understood everything and he wasn't being affected by any medication. The Court asked him yes, no questions, and he, following the instructions from his counsel, answered yes. Okay. Which he had been instructed to do. We don't have an affidavit from his lawyer saying, I told him just to say yes and no, right? Right. And that is precisely the problem in this case, is that the Court resolved an ineffective assistance of counsel claim when my client made out a claim. She did it – well, first of all, she wouldn't give him his psychiatric records. After she wouldn't give him his psychiatric records, she decided also that she would deny his motion, his separate motion, for an evidentiary hearing. Then she says, well, you know, I went ahead and got those records myself, and uses them against Fields. The records actually confirm that he was on these drugs. So that at least creates a controverted issue in terms of what were the effects of these drugs and why did he go off them? Well, it's his burden to say. I mean, suppose somebody says the defendant was on a long course of Cravacol and Zestiretic. Do you think that sets up an incompetence of case where counsel is ineffective for allowing the person to take a plea while they're under the influence of Cravacol and Zestiretic? I don't know what those drugs do. Exactly. And neither – and I'll tell you what they do do. They control blood pressure and cholesterol. Now, a person who is under the influence of those drugs is not at all impaired in his ability to enter a guilty plea. Well, this is a drug that this Court has recognized has serious side effects. It tinkers with the mind. It tinkers with the personality. It can leave you with neurological disorders. It makes it right. It eliminates the hallucinations and delusions of schizophrenia. The problem is we don't know exactly what was happening, if anything at all, as a result of this drug when my client pled guilty. Because he didn't tell us. No. He did say. He said I wasn't confident. He said I couldn't understand. He said I just followed orders by saying yes. I mean, it's the drug. My guess is that most defendants that I pled out when I was in practice had difficulty understanding everything that was going on, because a lot of them weren't very smart. He also said to his counsel that he was on the drugs, and his counsel reassured him that he would get a competency evaluation. And that never happened. The counsel never told the Court. He never investigated. And we have no record at all about what counsel – why counsel did anything. Because all of this happened without an evidentiary hearing. The Court made findings, and those findings under Nunes are not entitled to any deference. And this case is more compelling than Nunes. Why? Because here not only does the Court assail his credibility, she goes the extra step of admitting evidence and evaluating it, the same evidence that my client asked for and was denied. All right. When your client said he was on Thorazine, the Court ordered these records, correct? But she didn't give them to him. All right. And the Court looked at them. And what did the – what supposedly did the record say that he was taking Thorazine for? What's in the record? What is in the record? The record says that he was prescribed Thorazine because he was dreaming about the electric chair. And then it doesn't say much more. She says that there's nothing here about hearing voices, which is what he said. But, of course, we have no doctor testifying about what he reported versus what was in the report. And Fields never has the benefit of responding as he's required to have this opportunity to respond to this evidence under Nevada law. He never gets that opportunity. He never gets the opportunity to even be at this hearing, which is sort of an evidentiary hearing, but it's not called an evidentiary hearing, and he has a right to be at any evidentiary hearing. And you're not allowed to admit extra record evidence in Nevada without an evidentiary hearing. So all of this happens in violation of state law. And those findings deserve no deference. My client is entitled to once and for all have an evidentiary hearing on these issues so that he can prove them up. So I'm going to reserve the balance of my time. Thanks. Maybe while you're seated you could find some page references to show us where the colorable case of incompetence is and what there is to have an evidentiary hearing about, where there's a colorable case of ineffective assistance. Just point us to the right pages. Sure. Can I please the Court? I'm Deputy Attorney General John Warwick. I represent the respondent appellee in this matter. One item I would like to bring to the Court's attention is that Mr. Fields made a statement about his guilt when he entered his guilty plea. I refer the Court to Excerpt of the Record 48. It's a transcript from the entry of plea hearing, and he is asked, and you've read the guilty plea memorandum, is that correct, defendant? Yes, ma'am. You have also read the information. In this case, it tells you what you're charged with. And at that point, at 48, he decides to waive the reading. And on page 49, he's asked, and at line 2 on page 49, Excerpt of the Record, and in the guilty plea memorandum, it indicates that the three counts that you're pleading guilty to are that on October 30, 1993, you forced a female named Poteet to have sexual intercourse with you against her will. He states yes. And he's asked again, and he's asked again. Both those times, he admits to the crime. It's not just at sentencing. It's at the entry of plea hearing. The elements of this crime which have been described, I think it was stated by counsel on page 14 of the opening brief, it states that trial counsel also failed to inform fields of the elements of the sexual assault, which requires that the perpetrator have knowledge of lack of consent of the victim. That is not what he was charged with. The court would look at the actual information. The three counts that he pled guilty to are counts 4, 9, and 22, which are found in the Excerpt of the Record 28, 29, and 32. And those show that, for example, on count 4, beginning on line 21 that he did on, or about November 9, 1993, then in their woefully and lawfully and feloniously sexually assault and subject Janet Newman, a female person to sexual penetration to with sexual intercourse by inserting his penis into her vagina against her will. So in terms of the argument about he's not being informed of the elements of the crime, I don't think that's got much in the way of traction because it's not about the knowledge of the lack of consent of his victim. It's whether or not it's against her will, because in the Nevada statute it's got it in the disjunctive. You've got against will and also in a position where he should have known that the victim was not able to defend themselves, et cetera. That's about the elements of the crime. The plea bargain itself, the State's position, of course, is that it does comport with constitutional requirements, and as the courts noted, this is a State court plea. It's not a Rule 11 plea under the Federal rule. So the State's not here. This Court is not sitting as a direct supervisory court, but as a constitutional review court. And while the plea is not perfect, it does comport with constitutional requirements. He states that he read and understood the plea agreement. That's shown on the record at page 48, the excerpt of the record, 48, which I've already mentioned. He stated, this is when he changes his plea, not just the sentencing, that he had sex with the victims against their will. That's shown, ER 49. And then he confirms that he signed the plea agreement. That's ER 50. This is a man who I think shows, based upon his other pleadings that he was able to file with the court, he's got a certain sophistication when it comes to dealing with the legal system. He confirms that he's got 14 years of education. So that's two more beyond high school, as I understand it. So he's able to present pleadings to the court. For example, when it comes to the questioning or the questions about his competence, that was never a question. The only time that's ever raised is when he files his State post-conviction action. He changes his guilty plea, admits to three counts, for which he gets a great benefit. He's facing 25 counts. It drops down to three. He has a chance to get out of prison by accepting this plea bargain. You know, if we're talking about coercion, I don't think that really matters in terms of, yes, there is an element of reality about the defendant's race, the race of the victims. But if you look at the number of counts and what he pled to, he got a good bargain, going from 25 down to three. The mental capacity is never raised after. Does he say that he told his lawyer he was on Thorazine and that it made him dopey or otherwise affected his ability to think? He doesn't do that until more than a year after he's sentenced. Did he say whether he had told his lawyer at the time? He makes that allegation. The thing that I find interesting is the timing of it, because after he changes his plea, he has a chance to, and this is before he's sentenced, he files a motion to dismiss his counsel. He files a motion to withdraw his plea. He files, I think it was an untimely state, not post-conviction, but a petition for rid of habeas corpus. And those are found in the exhibits. They're not in the exhibits of the record. That would be 15, 17, and 18. So he's clearly able to take care of his legal affairs. He wants to represent himself, and he's able to represent himself. So he's competent in that respect. And this is pointed out by the trial court in the ruling that she makes from the bench denying his state post-conviction. That's at ER 224. And the court makes a point of saying that he never once raised his mental capacity or alleged lack thereof or competence until long, long after the issue should have been mentioned. Now, at his sentencing on June 15, 1995, he made no reference to mental illness. And I don't think that there was any question that he was competent, and that's what the state district court found. That's at ER 230, 230. Now, competence, one definition of it is the defendant able to understand what's going on and to assist in his defense. And I think if you look at the transcripts, if you look at the motions that he's filed, that this is a man who is competent. And if he is competent, then his attorney has no reason to question his client's competence. He's got no reason to say, you know what, we definitely have to get you a mental health evaluation. The record in the transcript shows that this man was in control of his faculties. The ---- actually, does the Court have any further questions? In conclusion, then, I would ask this Court to not disturb the lower court's decision. Thank you. Thank you, counsel. Okay. Let me just run through what it is that the Court, I believe, what you asked for, which is to substantiate what it is that he said about being on Thorazine. Okay. At page 103, and then I think he repeats essentially in another part of his pleadings in a memo, in his postconviction memo at 120, he recounts the facts, basically, that he was prescribed Thorazine and that he was on it for a period of months. And my understanding of the drug is it actually is relevant that you're on it for a long time before you might be starting to suffer these side effects. Obviously, that's not in the record. That's just something that's what I've learned about it. That's on page 103 and 120. On page 187 and one ---- Wait a minute. I'm looking at 103. Yeah. And it doesn't say that the Thorazine impaired his mentation. It says that he had impaired mentation and a psychiatrist prescribed Thorazine. Right. Usually when a doctor prescribes a medication, it's to cure you rather than to harm you, at least in this country. And the Thorazine is usually used for that purpose. Right. But the problem is here that we're sort of in ---- See, I'm looking for a sworn statement. I was dopey. I couldn't think straight because of this medication I was taking or any other reason. Well, if you would allow me, he also says at 122 that he was ---- where he continues in this,  he was suffering from the adverse and lingering effects of that medication. Now, there's a factual issue here, which is a problem, and I don't think that we can resolve this or that you can resolve this from the bench, which is what was his condition before he got the Thorazine? What was his condition with the Thorazine properly treated? Then we have the district court, the state court, saying he was supposedly on it the whole time. He was supposedly prescribed it the whole time he was in jail, but we know from what he says that he's not taking it. So is that making him worse or better? Or the truth is we just don't know. We don't know what effects he's suffering from being from the use, misuse, or sudden discontinued use of this drug. That's a real problem. And then, if I could just continue for a second, at 187, 88, he tells his counsel that he's on the drug. That's where his counsel reassures him that he'll get him a competency hearing. Then also on 188, he says he was under the influence of Thorazine. And on page 200, he says that he was unable to understand what was being read to him and that counsel instructed him to say yes and was essentially unconcerned, appeared unconcerned with the competency issue right up to right before the guilty plea. What was that last page number you gave? 200. 200. Thank you. And I just, if I can make one more sentence with respect to the Boykin claim. This is where the IAC and the Boykin claim link. And I, the district court relies on counsel to do its job. It relies on that plea agreement as a shortcut to doing a full-fledged canvass, okay? But when counsel doesn't do his job, when counsel is, for these various reasons, has failed to provide effective assistance of counsel, then we can't rely on that claim, because then we're back to where they were in Boykin, where you have a record that's actually silent about his understanding, his knowing understanding of waiving his constitutional rights, and you can't determine that from a silent record. And finally, I really think that this case is as strong or more compelling than Nunes v. Mueller. You've really got the same problem. We need an evidentiary hearing to work this out. Thank you. Thank you, counsel. Fields v. Crawford is submitted. He is adjourned until 9 a.m. tomorrow. All rise. This court for this session has adjourned. Thank you.
judges: Oakes , Kleinfeld, Callahan